IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LINDA CUMMINGS PACE,<br><br>                Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br>                Defendant. | MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER<br><br>Case No. 2:13-cv-267-BCW<br><br>Magistrate Judge Brooke C. Wells |

All parties have consented to having United States Magistrate Judge Brooke C. Wells conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]

Plaintiff Linda Cummings Pace ("Plaintiff") seeks judicial review of the determination of the Social Security Administration that denied her applications for Disability, Disability Insurance Benefits and Supplemental Security Income. After careful consideration of the written briefs and the administrative record, the Court has determined that oral argument is not necessary and issues the following Memorandum Decision and Order REVERSING AND REMANDING the decision of the Commissioner.

## **BACKGROUND**

Plaintiff, Linda Cummings Pace, who was born on December 14, 1957,[2] filed an application for disability, disability insurance benefits and supplemental security income on March 26, 2008.[3] Plaintiff's claims were initially denied on July 2, 2008 and upon

---

[1] Docket no. 15.
[2] Administrative Record, docket no. 9 [hereinafter referred to as "Tr."] at 50.
[3] Tr. at 34.

reconsideration on December 16, 2008.[4] Thereafter, on January 30, 2009, Plaintiff filed a written request for a hearing.[5] A hearing was held on April 20, 2010.[6] On June 11, 2010, an Administrative Law Judge ("ALJ") issued a written opinion denying Plaintiff's claims for benefits.[7] Plaintiff then appealed the decision to the Appeals Council.[8] The Appeals Council denied Plaintiff's request for review on February 22, 2013.[9] Pursuant to 42 U.S.C. §405(g), this appeal followed.

### A. Hearing Testimony-April 20, 2010

At the hearing before the ALJ on April 20, 2010, testimony was received from Plaintiff, medical expert, Dr. Margaret Moore and vocational expert, James Cowart.[10]

Plaintiff testified she is unable to work because she can't sit in one place for an extended period of time due to shooting pains in her back that go across to her hip and down her left leg.[11] Plaintiff testified her pain is usually between eight and nine on a ten point pain scale[12] and she is most comfortable lying down with her feet propped up with pillows under her knees.[13]

Plaintiff testified that she lies down mostly all day long. Her husband cleans their home but she shares cooking responsibilities with him.[14] Plaintiff stated she only cooks microwave dinners which take approximately 20 minutes to prepare.[15] In the past, Plaintiff relayed she worked in a hotel. However, Plaintiff testified she was unable to return to that kind of work due

---

[4] Id.
[5] Tr. at 123.
[6] Tr. at 34.
[7] Tr. at 31.
[8] Tr. at 1.
[9] Tr. at 1.
[10] Tr. at 48.
[11] Tr. at 57.
[12] Tr. at 61.
[13] Tr. at 59.
[14] Tr. at 59-60.
[15] Tr. at 60.

to her impairments.[16] Specifically, Plaintiff stated the reason she cannot work is because, "I just can't sit there at the desk anymore. I can't do paperwork and do the bills and the payroll and everything else…"[17]

Plaintiff is unable to drive because her hands fall asleep and due to back and leg impairments.[18] Plaintiff has problems walking on uneven ground and has problems with stairs.[19] Plaintiff further testified that she can only concentrate on a particular activity for five minutes due to her back pain.[20] However, Plaintiff is able to dress herself with some difficulty and can go shopping but is not able to be of much help because it is very difficult for her to lift items such as a gallon of milk.[21]

Plaintiff stated she is currently taking Prozac to help with depression and anxiety. The depression she experiences is a result of losing her job and because of a past abusive relationship.[22] Plaintiff stated the Prozac causes her to experience headaches, heartburn, dizziness, shakiness, sleepiness and drowsiness.[23] Plaintiff also takes Trazodone, Cyclobenzaprine and Ibuprofen for her impairments.[24] According to Plaintiff, the Cyclobenzaprine makes her feel "dizzy, lightheaded, fuzzy headed."[25]

Next, medical expert, Dr. Margaret Moore, a licensed psychologist in the State of Utah testified. Dr. Moore summarized Plaintiff's medical records and the findings of another physician, Dr. Swanner, who examined Plaintiff and diagnosed Plaintiff with adjustment issues

---

[16] Tr. at 58-59.
[17] Tr. at 60.
[18] Tr. at 62.
[19] Tr. at 63.
[20] Id.
[21] Tr. at 65.
[22] Tr. at 67.
[23] Tr. at 69.
[24] Tr. at 70.
[25] Id.

and a pain disorder.[26] The ALJ then asked Dr. Moore to "compare Dr. Swanner's report with the record from treating sources and how they compare being similar versus being their differences."[27] Dr. Moore stated medication management and opinions with regard to effectiveness of medications differed between the treatment providers.[28] However, basically the providers identified "the same set of issues, worry about social circumstances, pain and some depression."[29] Dr. Moore then testified that the medical records from Plaintiff's treatment providers "did not have a lot of meat to them."[30]

Dr. Moore then opined Plaintiff's "…depression, anxiety and pain issues are consistently expressed and they seem to be genuine."[31] Further, Dr. Moore opined "…the impression that I got was that the depression and the anxiety was more tied to the circumstances of losing her work and her livelihood and that sort of thing. But that the pain was more persistent. That had been in place and had, perhaps, not been so responsive to treatment."[32] As for prognosis, Dr. Moore believed Plaintiff's depression and anxiety seem to be tied to social circumstances and therefore may be alleviated if Plaintiff's financial situation were to improve. Further, Dr. Moore stated that she believed there was some benefit to Plaintiff's current medication regime.[33] However, if Plaintiff could afford better pain medications that her pain might also be alleviated.[34] As to prognosis, Dr. Moore testified

> …what I struggle with, is that we certainly heard today and the record speaks to chronic problem, so there's a legitimate component to this that may or may not be

---

[26] Tr. at 71-72.
[27] Tr. at 72.
[28] Id.
[29] Id.
[30] Tr. at 73.
[31] Id.
[32] Tr. at 74.
[33] Tr. at 75.
[34] Id.

4

amenable to any kind of treatment, and that's the physical side, not the mental side. The depression part...has the potential for getting better[.][35]

As to limitations under the "B" criteria "Mental Residual Capacity Form 4734," Dr. Moore testified Plaintiff's concentration, persistence and pace would be mildly to moderately limited and Plaintiff's regular attendance and normal workweek items would be moderately limited.[36]

Lastly, testimony was received from James Cowart, vocational expert. Mr. Cowart testified that Plaintiff's past relevant work included a directory assistance operator, hotel clerk, property manager, and hotel manager.[37] The ALJ then asked Mr. Cowart two hypotheticals. In the end, Mr. Cowart opined the hypothetical person could perform work in significant numbers in the national economy in both the light and sedentary categories. The job identified that could be performed in both hypotheticals was that of a hotel desk clerk.[38]

Plaintiff's attorney then asked the vocational expert if a person who was restricted to 20 hours per week, whether or not they could perform the jobs identified. The vocational expert testified they could not.[39] Then, counsel asked if the hypothetical person could not lift anything whether they could perform the stated jobs. The vocational expert testified they could not.[40] Lastly, Plaintiff's attorney questioned the vocational expert about his opinions as to whether the jobs identified could be performed if the hypothetical person was off task or needed to alternate between sitting and standing during the work day. The vocational expert testified that he was

---

[35] Tr. at 78.
[36] Tr. at 79-81.
[37] Tr. at 82-83.
[38] Tr. 83-87.
[39] Tr. at 88-89.
[40] Tr. at 89.

unsure if he could ethically approach employers with those restrictions and employer tolerances vary.[41]

   B. **ALJ's Opinion**

The ALJ denied benefits to Plaintiff at step four of the required five-step sequential evaluation process[42] for determination of disability. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2007, the alleged onset date.[43] At Step Two, the ALJ found Plaintiff to have the severe impairments of "a back disorder, an affective disorder (depression), an anxiety-related disorder (a general anxiety disorder) and a somatoform disorder."[44] However, the ALJ found at Step Three that Plaintiff's impairments did not meet or medically equal a listed impairment set forth in 20 CFR Part 404, Subpart P, Appendix 1.[45]

In making this determination, the ALJ evaluated Plaintiff's statements and the opinion evidence related to her back pain. Specifically, with regard to the findings of Dr. Emily Ostarcevic, whose opinion is at issue in this appeal, the ALJ made the following findings:

> Nurse Emily Ostarcevic, FNP examined the claimant on April 16, 2008 and found claimant had normal sacroiliac joint mobility bilaterally, normal curvature of the spine, no muscle spasms, a negative straight leg raising test result bilaterally, normal motor strength in the lower extremities, normal sensory appreciation in the lower extremities, normal deep tendon reflexes, negative Babinksi test result and a normal gait. Subsequent visits revealed the same objective evidence. Hence, she has no serious lumbrosacral spinal deformity or impairment. The objective evidence does not support the kind of severe pain she alleges.[46]

---

[41] Tr. at 89-91.
[42] [42] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step evaluation process for determining if a claimant is disabled).
[43] Tr. at 36.
[44] Id. Despite finding Plaintiff's mental impairments to be severe, later in his opinion, the ALJ stated with regard to Plaintiff's RFC, "[h]er mental limitations are either non-existent or very mild as well." Tr. at 41. Based upon the written opinion, the Court is unable to discern the justification or reasoning behind these two seemingly different positions with regard to Plaintiff's mental impairments.
[45] Tr. at 37.
[46] Tr. at 40.

6

On March 7, 2008, Emily Ostarcevic, FNP wrote to Workforce Services that claimant had a 25 year history of degenerative disc disease. She could not work more than twenty hours per week and could not engage in prolonged standing, sitting and could do no lifting. Nurse practitioners are not 'acceptable medical sources'…Instead the opinion of a nurse practitioner is considered an 'other source' that 'cannot establish the existence of a medically determinable impairment.'[47]

The ALJ found Plaintiff had the RFC to perform the full range of light work.[48] At Step Four, the ALJ found Plaintiff was capable of performing her past relevant work as a hotel desk clerk.[49] Therefore, the ALJ did not need to progress to Step Five and found Plaintiff not to be disabled.[50]

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether her findings are supported by "substantial evidence" and whether the correct legal standards were applied.[51] If supported by substantial evidence, the findings are conclusive and must be affirmed.[52] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[53] Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[54] Moreover, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record."[55]

---

[47] Tr. at 41.
[48] Id.
[49] Id.
[50] Id.
[51] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1993).
[52] Richardson v. Perales, 402 U.S. 389, 401 (1981).
[53] Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996).
[54] Zolanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).
[55] Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[56] In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[57] However, the reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[58] Further, the Court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[59] Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this Court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[60]

In applying these standards, the Court has considered the Administrative Record, relevant legal authority, and the parties' briefs. The Court deems oral argument to be unnecessary and finds as follows:

## **ANALYSIS**

Plaintiff raises three issues upon appeal: (1) whether the ALJ erred by failing to properly evaluate the medical opinion evidence? (2) Whether the ALJ erred by failing to include all established impairments in Ms. Pace's residual functional capacity assessment? and (3) Whether the ALJ erred by failing to properly evaluate Ms. Pace's credibility? For the reasons set forth more fully below, the Court finds the ALJ erred in the evaluation of the opinions of nurse practitioner Emily Ostarcevic and Dr. Margaret Moore. Therefore, the Court will not reach the merits of the other two issues Plaintiff's raises.

---

[56] Id.
[57] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999).
[58] Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).
[59] Lax, 489 F.3d at 1084 (quoting Zolanski, 372 F.3d at 1200).
[60] Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).

A.   **Evaluation of Medical Testimony**

Plaintiff argues that ALJ did not properly evaluate the opinion of Plaintiff's treating nurse practitioner, Ms. Emily Ostarcevic and Dr. Margaret Moore, the medical expert who testified at the hearing before the ALJ.

   **1. Emily Ostarcevic, APRN**

In his written opinion, the ALJ summarized in office tests that Ms. Ostarcevic performed to test Plaintiff's back ailments. Ms. Ostarcevic did not find any abnormalities. Presumably based upon the in-office findings, the ALJ found Plaintiff "has no serious lumbrosacral spinal deformity or impairment. The objective evidence does not support the kind of severe pain she alleges."[61]

Later in the opinion, the ALJ again discusses Ms. Ostarcevic. The ALJ noted that she "wrote to Workforce Services that [Plaintiff] had a 25 year history of degenerative disc disease. She could not work more than twenty hours per week and could not engage in prolonged standing, sitting and could do no lifting."[62] Without any sort of further analyses of Ms. Ostarcevic's treatment of Plaintiff, the ALJ simply discounted the opinion because Ms. Ostarcevic is a nurse practitioner and "[n]urse practitioners are not 'acceptable medical sources…' Instead the opinion of a nurse practitioner is considered an 'other source' that 'cannot establish the existence of a medically determinable impairment.'"[63] After this commentary, the ALJ stated "[i]n sum, the above residual functional capacity assessment is supported by the mild degenerative disc disease of claimant's thoracic and lumbosacral spine. Her mental limitations are either non-existent or very mild as well."[64]

---

[61] Tr. at 37.
[62] Tr. at 41.
[63] Id.
[64] Id.

9

Plaintiff asserts the ALJ's analysis of Ms. Ostarcevic constitutes cause for remand because the ALJ should have evaluated and weighed her opinions using the framework contemplated by the Social Security Rules and regulations. According to Plaintiff, this error is not harmless because the ALJ ignored evidence from a treating source that would have directed a finding of disabled.

On the other hand, Defendant argues Plaintiff's limited treatment history with Ms. Ostarcevic made her not a "treating source." In addition Defendant argues Ms. Ostarcevic's opinion was not consistent with or supported by the other evidence of record, including Ms. Ostarcevic's own treatment notes. Specifically, Defendant argues the ALJ correctly noted that although Plaintiff's radiological exams showed impairments in Plaintiff's spine, Ms. Ostarcevics's own examination findings were relatively benign. Therefore, Ms. Ostarcevic's opinion as to Plaintiff's limitations could properly be discounted and the ALJ's analysis was supported by substantial evidence.

First, the Court finds based upon the administrative record that Ms. Ostarcevic was a "treating source." Further, the ALJ correctly stated that as a nurse practitioner, she is not an "acceptable medical source."[65] Non-acceptable medical sources may provide "insight into the severity of the [Plaintiff's] impairment(s) and how it affects the individual's ability to function."[66] Thus, the ALJ must "explain the weight given to these opinions or otherwise ensure that the discussion of the evidence allows a claimant or subsequent reviewer 'to follow adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.'"[67]

---

[65] See SSR 06-3p ("Medical sources who are not 'acceptable medical sources,' [include] nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists").
[66] SSR 06-3p (Aug. 9, 2006, effective date).
[67] Sanchez v. Astrue, No. 2:09-cv-1116-DN, 2011 WL 4591900 at *5 (D. Utah Sept. 30, 2011)(unpublished)(citing Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007).

The Court agrees with Plaintiff that the ALJ erred in his evaluation of the opinion of Ms. Ostarcevic. Initially, the Court notes that the ALJ's summary of the June, 2008 MRI ordered by Ms. Ostarcevic demonstrates more impairments than the ALJ described. The ALJ stated that the MRI revealed that Plaintiff's lumbar spine "showed multilevel disc degeneration and loss of height throughout the lumbrosacral spine with disc degeneration and facet anthropathy. There was slight posterior offset of L2 and L3. No evidence of large disc protrusion or evidence of spinal stenosis was seen."[68] However, upon review, the MRI also found that Plaintiff had "moderately severe degenerative changes throughout the lumbrosacral spine…"[69] This latter finding was not contained in the ALJ's written opinion. The ALJ may have considered this finding and chose not to include it in his opinion but it is difficult to discern. The ALJ did not provide any commentary on the MRI's findings other than to summarize them and the Court is unable to establish whether or not the MRI findings were used in discounting Plaintiff's allegations of pain. This is true especially in light of the ALJ's summary later in his opinion of the in-office tests performed on Plaintiff by Ms. Ostarcevic then the ALJ's immediate statement (without discussion) of the MRI that "the objective evidence does not support the kind of severe pain she alleges."

Moreover, the Court is perplexed based upon the findings of the MRI how the ALJ came to the conclusion that "…the above residual functional capacity assessment is supported by the mild degenerative disc disease of claimant's thoracic and lumbrosacral spine."[70] The MRI's findings included "severe degenerative changes" and "multilevel disc degeneration."[71] Thus, the ALJ's assessment that Plaintiff only has "mild degenerative disc disease" seems to contradict the

---

[68] Tr. at 37.
[69] Tr. at 323.
[70] Tr. at 41.
[71] Tr. at 323.

findings of the MRI and lend support to Plaintiff's arguments that Ms. Ostarcevic's opinions were supported by the record.

Further, the ALJ's very limited analysis of Ms. Ostarcevic's opinion and simple statement that "…the opinion of a nurse practitioner is considered an 'other source' that cannot establish the existence of a medically determinable impairment" does not allow the Court, as a subsequent reviewer to discern the amount of weight, if any, was given to the opinion. Nor is the Court able to meaningfully review the ALJ's reasoning for assigning such weight. Proper support for treating providers is especially important in a case such as this, where the Plaintiff's medical records are somewhat limited and the findings of a MRI offers objective evidence of Plaintiff's impairments. The MRI was not interpreted in a way that allowed the Court to follow the ALJ's reasoning. Therefore, the Court believes remand is necessary in order for the objective evidence and Ms. Ostarcevic's opinion to be properly evaluated and weighed.

**2. Dr. Margaret Moore**

Defendant argues that the ALJ's decision is consistent with Dr. Moore's opinion, and takes into account Dr. Moore's testimony as to Plaintiff's limitations. The Court finds the Defendant's arguments with regard to Dr. Moore to be unpersuasive. First, at the hearing, Dr. Moore rendered a "medical opinion" as to Plaintiff's condition. 20 C.F.R. § 416.927(a)(2) states "medical opinions are statements from physicians or other psychologists or other acceptable medical sources that reflect the judgments about the nature and severity of [a claimant's] impairments, including…symptoms, diagnosis, and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.

20 C.F.R. § 416.927 directs that "[r]egardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight ... we

consider [relevant] factors in deciding the weight we give to any medical opinion." Here, Dr. Moore is a licensed psychologist in the State of Utah and provided testimony regarding Plaintiff's symptoms, diagnoses and prognosis. The ALJ did not mention Dr. Moore's opinion in his written opinion nor did he weigh or analyze her opinion in any way. The Court finds the ALJ's omission to constitute legal error.

Additionally, the Court finds that the ALJ's omission of evaluating Dr. Moore's opinion in his written opinion is not a harmless error. The 10th Circuit has articulated "[i]f the ALJ's RFC is "generally consistent" with the findings in a medical opinion, or if the RFC is "more favorable" to the claimant than the opinion's findings, then '[t]here is no reason to believe that further analysis or weighing of [the]opinion could advance [the claimant's] claim of disability.'"[72] Here, Dr. Moore opined that Plaintiff's allegations of pain are legitimate and she was unsure if they would be amenable to treatment. Dr. Moore also identified areas where she believes Plaintiff is moderately limited. Although Dr. Moore's opined she did believe that Plaintiff's mental impairments have the potential to improve perhaps with a different medication regime,[73] the ALJ's RFC did not include any additional limitations in Plaintiff's RFC other than to limit her to light work. Therefore, by the ALJ not weighing or commenting on Dr. Moore's opinion in his written opinion, it is impossible for the Court to meaningfully review the ALJ's determination. Dr. Moore's opinion certainly could have aided in crafting Plaintiff's a more restrictive RFC and/or assisted a finding of disability.

## CONCLUSION & ORDER

For the foregoing reasons, the Court finds the ALJ erred in the evaluation of the opinions of nurse practitioner Emily Ostarcevic and Dr. Margaret Moore. Therefore, IT IS HEREBY

---

[72] Thompson v. Colvin, No. 13-5064, 551 Fed. App'x 944, 948 (10th Cir. Jan. 3, 2014)(unpublished)(quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012).
[73] Tr. at 74-75.

ORDERED that the Commissioner's decision is REVERSED AND REMANDED for further proceedings consistent with this opinion.

DATED this 7 August 2014.

_____
Brooke C. Wells
United States Magistrate Judge